Russell S. Thompson IV (029098)
Joseph Panvini (028359)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@consumerlawinfo.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Taylor and Douglas Taylor, | Case No. |
| Plaintiffs, | **COMPLAINT AND TRIAL BY JURY DEMAND** |
| vs. | |
| Western Towing of Phoenix, Inc. and LVN Motors, LLC dba Airpark Dodge Chrysler Jeep, | |
| Defendants. | |

## NATURE OF ACTION

1.      Plaintiffs Brandon and Douglas Taylor (collectively, "Plaintiffs") bring this action against Defendants Western Towing of Phoenix, Inc. and LVN Motors, LLC dba Airpark Dodge Chrysler Jeep (collectively, "Defendants") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and Arizona common law.

## JURISDICTION, VENUE, AND STANDING

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1367 and 28 U.S.C. § 1331.

3.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiffs' action occurred in this district, where Plaintiffs reside in this district, and where Defendants transact business in this district.

4.     "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

5.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing.  *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA"); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition."   *Lane*, 2016 WL 3671467 at \*4 (emphasis in original).

### THE FAIR DEBT COLLECTION PRACTICES ACT

7.     Congress enacted the FDCPA in order to eliminate "abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1179-80 (9th Cir. 2006) (citing 15 U.S.C. § 1692(e)).

8.     To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

9.     Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers.  *Clark*, 460 F.3d at 1176.

10.     "In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress 'clearly intended that private enforcement actions would be the primacy enforcement tool of the Act.'"   *Id.* (quoting *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982)).

11.     Violations of the FDCPA are assessed under the least sophisticated consumer standard which is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors."  *Gonzales v. Arrow Fin. Servs.,*

*LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)).

12.    "An FDCPA Plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117-18 (9th Cir. 2014) (emphasis in original).

13.    "[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk." *Clark*, 460 F.3d at 1171-72; *see also FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393 (1965) ("[I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.") (internal quotations omitted).

14.    For the purpose of 15 U.S.C. § 1692f(6), a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."   15 U.S.C. § 1692a(6).

15.    The FDCPA prohibits such persons, such as tow operators or repossession companies, from taking any nonjudicial action to effect dispossession or disablement of property if there is no present right to take possession of the property.   15 U.S.C. § 1692f(6).

## TRESPASS TO CHATTEL UNDER ARIZONA COMMON LAW

16.     The tort of trespass to a chattel may be committed by intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another.  *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330–31, 762 P.2d 609, 617–18 (Ct. App. 1988) (citing *Restatement (Second) of Torts* § 217 (1965)).

17.     "Dispossession" is defined as the intentional taking of a chattel from the possession of another without the other's consent, or the intentional barring of a possessor's access to a chattel. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965)).

18.     One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (1) he dispossesses the other of the chattel, (2) the chattel is impaired as to its condition, quality, or value, (3) the possessor is deprived of the use of the chattel for a substantial time or (4) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965) Comment B).

## CONVERSION UNDER ARIZONA COMMON LAW

19.     Conversion is an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.  *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, 91 P.3d 362, 365 (Ct. App. 2004); *Sears Consumer Fin. Corp. v. Thunderbird Prod.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (Ct. App. 1990); *Huskie v. Ames Bros. Motor & Supply Co.,* 139 Ariz. 396, 402, 678 P.2d 977, 983 (App.1984).

20.     To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion. *Case Corp.*, 208 Ariz. At 143; *Sears Consumer Fin. Corp.,* 166 Ariz. at 335, 802 P.2d at 1034; *Empire Fire & Marine Ins. Co. v. First Nat'l Bank of Ariz.,* 26 Ariz.App. 157, 159, 546 P.2d 1166, 1168 (App.1976).

## NEGLIGENCE UNDER ARIZONA COMMON LAW

21.     Under Arizona law, negligence has four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.  *Sanders v. Alger*, 242 Ariz. 246, 248, 394 P.3d 1083, 1085 (2017); *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9, 150 P.3d 228 (2007).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

22.     The Restatement of Torts recognizes that conduct which is extreme and outrageous may cause severe emotional distress for which one may be subject to liability. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citing Restatement (Second) of Torts § 46(1) (1965)).

23.     Liability attaches for intentional infliction of emotion distress when conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . in which . . . an average member of the community would . . . exclaim, 'Outrageous!' "  *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (quoting Restatement (Second) of Torts § 46 comment d).

24.     The elements of intentional infliction of emotional distress are: first, the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.  *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987); *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 257, 619 P.2d 1032, 1035 (1980); *Accord Lucchesi v. Stimmel,* 149 Ariz. 76, 78-9, 716 P.2d 1013, 1015-16 (1986).

## PARTIES

25.     Plaintiffs are natural persons who at all relevant times resided in the State of Arizona, County of Maricopa.

26.     Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3).

27.     Defendant Western Towing of Phoenix, Inc. ("Western Towing") is an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

28.     Western Towing is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

29.     Defendant LVN Motors, LLC dba Airpark Dodge Chrysler Jeep ("Airpark") is an Arizona limited liability company engaged in the business of selling new and used vehicles and operates a car lot located in Scottsdale, Arizona.

## FACTUAL ALLEGATIONS

30.     Sometime before June 14, 2017, Airpark engaged Western Towing to act as its repossession agent.

31.     Thereafter, Airpark directed Western Towing to repossess a Red Nissan Altima located in the area of 2200 West St. Angelo Street in Gilbert, Arizona.

32.     Thereafter, Western Towing dispatched a tow truck operator named Justin Landers to repossess the Red Nissan Altima.

33.     On June 14, 2017, at around 1:00 P.M., Landers went to 2200 West St. Angelo Street in Gilbert, Arizona to look for the subject vehicle.

34.     When he arrived, Landers spotted Plaintiffs' 2005 Red Nissan Altima and believed that it was the vehicle he had been sent to repossess.

35.     Landers did not verify the VIN number for the vehicle, if he had, he would have realized that Plaintiffs' 2005 Red Nissan Altima was not the vehicle he was sent to repossess.

36.     Landers contacted Airpark and provided Airpark the license plate number of Plaintiffs' vehicle.

37.     Airpark advised Landers that Plaintiffs' vehicle was the vehicle he was sent to repossess.

38.     Thereafter, Landers, while acting in the course and scope of his employment at Western Towing, took possession of Plaintiffs' vehicle.

39.     At the time Landers took possession of Plaintiffs' vehicle, Landers had no legal authority to do so.

40.     At the time Landers took possession of Plaintiffs' vehicle, Western Towing had no legal authority to direct Landers to do so.

41.     At the time Landers took possession of Plaintiffs' vehicle, Airpark, had no legal authority to engage Western Towing do so.

42.     Plaintiff, Brandon Taylor, panicked upon discovering his vehicle was missing.

43.     He contacted Gilbert police and reported the vehicle stolen.  *See* Police Report attached hereto as Exhibit A.

44.     He even drove around the surrounding area to see if his vehicle had been taken and dumped nearby.

45.     Thereafter, Brandon Taylor and his wife endured the fear, anxiety and stress associated with being the victim of a serious crime.

46.     They made a claim with their insurance company, and even shopped for a new apartment, as they believed that their current living arrangement was no longer safe.

47.     Around this same time, Plaintiffs' 2005 Red Nissan Altima was taken to an auction house and checked out for sale.

48.     It was not until the vehicle was about to be auctioned that someone at the auction house discovered the vehicle was the wrong vehicle.

49.     Upon discovering that they had taken the wrong vehicle, neither Airpark nor Western towing notified Plaintiffs.

50.     Instead, several days later, Landers, acting at the behest of Western Towing and Airpark, returned to Brandon Taylor's residence with Plaintiffs' vehicle and attempted to surreptitiously return it as if it had never been taken.

51.     However, Landers was caught in the act of returning the vehicle by Plaintiff, Douglas Taylor.

52.     Douglas Taylor questioned Landers, and Landers explained that Airpark had hired Western Towing to take a vehicle matching Plaintiffs' vehicle, and that Landers had not verified the VIN number on Plaintiffs' car before taking it.

53.     Landers also advised that before taking Plaintiffs' vehicle, he provided Plaintiffs' vehicle's license plate number to Airpark, and Airpark confirmed that Plaintiffs' vehicle was the vehicle he had been sent to repossess.

54.     Landers stayed at the scene until Gilbert Police arrived and the parties gave their statements regarding what had happened.

55.     Thereafter, Plaintiffs' vehicle experienced electrical issues.

56.     As a result of said electrical issues, the vehicle would not start, and Plaintiffs were forced to incur repair expenses.

57.     Additionally the interior of the vehicle was ransacked and several of Plaintiffs' possessions that were inside the vehicle when it was taken, have not been returned.

**COUNT I**
**VIOLATION OF 15 U.S.C. § 1692f(6)(A)**
**WESTERN TOWING**

58.     Plaintiffs repeat and re-allege each factual allegation contained above.

59.     Western Towing had no legal authority to repossess Plaintiffs' vehicle or its contents.

60.    Defendant violated 15 U.S.C. § 1692f(6)(A) by taking or threatening to take non-judicial action to effect dispossession or disablement of Plaintiffs' property where there was no present right to possession of the property claimed as collateral through an enforceable security interest.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)    Adjudging that Western Towing violated 15 U.S.C. § 1692f(6)(A);

b)    Awarding Plaintiffs statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)    Awarding Plaintiffs actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)    Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)    Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f)    Awarding such other and further relief as the Court may deem proper.

**COUNT II**
**COMMON LAW CONVERSION**
**WESTERN TOWING**

61.    Plaintiffs repeat and re-allege each factual allegation contained above.

62.    Western Towing had no legal authority to take possession of Plaintiffs' vehicle or its contents.

63.    Plaintiffs had immediate right to possession of the vehicle and its contents at the time Western Towing, took Plaintiffs' vehicle.

64.     Western Towing's repossession of the vehicle and its contents constitutes conversion under Arizona Law.

65.     As a result of Western Towing's conversion of Plaintiffs' vehicle, Plaintiffs suffered fear, anxiety and stress, as well as the expense and disutility associated with reporting the vehicle stolen, making a claim with their insurance company, and shopping for a new apartment.

66.     Additionally, Plaintiffs' vehicle was damaged in the process of its taking and readying for sale at auction, and some of Plaintiffs' personal effects were taken from the vehicle and not returned.

67.     Western Towing's actions in taking Plaintiffs' vehicle without authority, and subsequently attempting to surreptitiously return the vehicle, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Western Towing converted Plaintiffs' vehicle and its contents;

b)  Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c)  Awarding Plaintiffs punitive damages in an amount to be proved at trial

d)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e)  Awarding such other and further relief as the Court may deem proper.

## COUNT III
## COMMON LAW CONVERSION
## AIRPARK

68.     Plaintiffs repeat and re-allege each factual allegation contained above.

69.     Airpark, through its agent, Western Towing, took possession of Plaintiffs' vehicle and attempted to auction it off.

70.     Airpark had no legal authority to repossess Plaintiffs' vehicle or its contents, and had no authority to send it to auction.

71.     Plaintiff had an immediate right to possession of the vehicle and its contents at the time Airpark, through its repossession agent, Western Towing, took Plaintiffs' vehicle.

72.     Airpark's taking of the vehicle and its contents constitutes conversion under Arizona Law.

73.     As a result of Airpark's conversion of Plaintiffs' vehicle, Plaintiffs suffered fear, anxiety, and stress, as well as the expense and disutility associated with reporting the vehicle stolen, making a claim with their insurance company, and shopping for a new apartment and vehicle.

74.     Additionally, Plaintiffs' vehicle was damaged in the process of its taking and readying for sale at auction, and some of Plaintiffs' personal effects were taken from the vehicle and not returned.

75.     Airpark's actions in hiring Western Towing to take Plaintiffs' vehicle without authority, and its false confirmation to Western Towing's driver, that Plaintiffs'

vehicle was the correct vehicle to take, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Airpark converted Plaintiffs' vehicle and its contents;

b)  Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c)  Awarding Plaintiffs punitive damages in an amount to be proved at trial

d)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e)  Awarding such other and further relief as the Court may deem proper.

## COUNT IV
## COMMON LAW TRESPASS TO CHATTEL
## WESTERN TOWING

76.     Plaintiffs repeat and re-allege each factual allegation contained above.

77.     Western Towing intentionally took possession of Plaintiffs' vehicle and its contents.

78.     At the time Western Towing took possession of Plaintiffs' vehicle and its contents, Plaintiffs did not consent to Western towing's possession of their vehicle or its contents.

79.     Western Towing had no legal authority to take possession of Plaintiffs' vehicle or its contents.

80.     By taking possession of Plaintiffs' vehicle and its contents, Western Towing "dispossessed" Plaintiffs of their vehicle and its contents.

81.     As a result of Western Towing's dispossession, Plaintiffs were deprived of the use of their vehicle and its contents for a substantial time.

82.     As a result of Western Towing's dispossession, Plaintiffs' vehicle was impaired as to its condition quality and value.

83.     As a result of Western Towing's dispossession, Plaintiffs suffered fear, anxiety, and stress, as well as the expense, and disutility associated with reporting the vehicle stolen, making a claim with their insurance company, and shopping for a new apartment and vehicle.

84.     By intentionally dispossessing Plaintiffs of their vehicle and its contents without legal authority to do so Western Towing committed trespass to chattel.

85.     Western Towing's actions in taking Plaintiffs' vehicle without authority, and subsequently attempting to surreptitiously return the vehicle, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

   a)  Adjudging that Western Towing committed trespass to chattel with regard to Plaintiffs' vehicle and its contents;

   b)  Awarding Plaintiffs their actual damages in an amount to be proved at trial;

   c)  Awarding Plaintiffs punitive damages in an amount to be proved at trial

   d)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

   e)  Awarding such other and further relief as the Court may deem proper.

## COUNT V
## COMMON LAW TRESPASS TO CHATTEL
## AIRPARK

86.     Plaintiffs repeat and re-allege each factual allegation contained above.

87.     Airpark intentionally took possession of Plaintiffs' vehicle and its contents through its agents, Western Towing.

88.     At the time Airpark took possession of Plaintiffs' vehicle and its contents, Plaintiffs did not consent to Airpark's possession of their vehicle or its contents.

89.     Airpark had no legal authority to take possession of Plaintiffs' vehicle or its contents.

90.     By taking possession of Plaintiffs' vehicle and its contents, Airpark "dispossessed" Plaintiffs of their vehicle and its contents.

91.     As a result of Airpark's dispossession, Plaintiffs were deprived of the use of their vehicle and its contents for a substantial time.

92.     As a result of Airpark's dispossession, Plaintiffs' vehicle was impaired as to its condition quality and value.

93.     As a result of Airpark's dispossession, Plaintiffs suffered fear, anxiety, and stress, as well as the expense and disutility associated with reporting the vehicle stolen, making a claim with their insurance company, and shopping for a new apartment and vehicle.

94.     By intentionally dispossessing Plaintiffs of their vehicle and its contents without legal authority to do so Airpark committed trespass to chattel.

95.     Airpark's actions in hiring Western Towing to take Plaintiffs' vehicle and its contents without authority, and its false confirmation to Western Towing's driver, that Plaintiffs' vehicle was the correct vehicle to take, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Airpark committed trespass to chattel with regard to Plaintiffs' vehicle and its contents;

b)  Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c)  Awarding Plaintiffs punitive damages in an amount to be proved at trial;

d)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e)  Awarding such other and further relief as the Court may deem proper.

### COUNT VI
### COMMON LAW NEGLIGNCE
### AIRPARK

96.     Plaintiffs repeat and re-allege each factual allegation contained above.

97.     Airpark dispatched its repossession agent, Western Towing, to take possession of a vehicle matching Plaintiffs' vehicle's description.

98.     When Western Towing was unable to verify the VIN number of Plaintiffs' vehicle, its employee contracted Airpark to verify the license plate number of the target vehicle.

99.     Airpark's employee advised Western Towing's employee that Plaintiffs' vehicle's license plate number matched the license plate of the target vehicle.

100.   Upon information and belief, Airpark's employee conducted no investigation or research before verifying to Western Towing that Plaintiffs' vehicle's license plate matched the target vehicle.

101.   If Airpark's employee had investigated or researched the correct license plate, it would have discovered that Plaintiff's license plate did not match the license plate of the target vehicle.

102.   Before verifying that Plaintiff's vehicle was actually the target vehicle, a reasonably prudent person would have compared the license plate number of the intended target to the vehicle to be repossessed.

103.   In representing to Western Towing that Plaintiffs' vehicle's license plate matched the license plate of the target vehicle, without actually looking to see if the two matched, Airpark acted negligently.

104.   As a proximate cause of Airpark's negligence, Plaintiffs' vehicle and its contents were taken without their authority, ransacked and damaged.

105.   Plaintiffs suffered significant stress, mental anguish, and psychic injury as a result of their vehicle being taken, and the perception that their home was no longer safe.

106.   Airpark's actions in hiring Western Towing to take Plaintiffs' vehicle and its contents without authority, its false confirmation to Western Towing's driver that Plaintiffs' vehicle was the correct vehicle to take, its failure to immediately notify

Plaintiffs that it had taken their vehicle, and its instruction to Landers to surreptitiously return the vehicle to Plaintiffs' home evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Airpark acted negligently;

b) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c) Awarding Plaintiffs punitive damages in an amount to be proved at trial

d) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

### COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AIRPARK

107.  Plaintiffs repeat and re-allege each factual allegation contained above.

108.  Airpark dispatched its repossession agent, Western Towing, to take possession of a vehicle matching Plaintiffs' vehicle's description.

109.  When Western Towing was unable to verify the VIN number of Plaintiffs' vehicle, its employee contracted Airpark to verify the license plate number of the target vehicle.

110.  Airpark's employee advised Western Towing's employee that Plaintiffs' vehicle's license plate number matched the license plate of the target vehicle.

111.   Upon information and belief, Airpark's employee conducted no investigation or research before verifying to Western Towing that Plaintiffs' vehicle's license plate matched the target vehicle.

112.   In representing to Western Towing that Plaintiffs' vehicle's license plate number matched the license plate of the target vehicle, and directing Western Towing to take Plaintiffs' vehicle, Airpark acted outrageously, atrociously, and in a manner intolerable in a civilized community.

113.   Airpark had no authority to take possession of Plaintiffs' vehicle, and Airpark's taking of Plaintiffs' vehicle constitutes "theft" as defined by A.R.S. § 13-1802.

114.   By failing to verify that Plaintiff's license plate matched the license plate of the target vehicle, before directing Western Towing to take Plaintiff's vehicle, Airpark recklessly disregarded the possibility that it would take the vehicle of an innocent consumer, and the consequences for doing so.

115.   It is a near certainty that innocent consumers, upon finding their vehicle taken without reason, would suffer severe emotional distress.

116.   Thus, Airpark recklessly disregarded the near certain severe emotional distress that its conduct would cause.

117.   As a proximate cause of Airpark's actions, Plaintiffs suffered severe emotional distress.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Airpark intentionally inflicted emotional distress on Plaintiffs;

b)  Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c)  Awarding Plaintiffs punitive damages in an amount to be proved at trial

d)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e)  Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

118.   Plaintiffs are entitled to and hereby demand a trial by jury.

Dated: April 19, 2018

Respectfully submitted,

s/ Russell S. Thompson IV
Russell S. Thompson IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@consumerlawinfo.com

s/ Joseph Panvini
Joseph Panvini (028359)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8875
Facsimile: (866) 317-2674
jpanvini@consumerlawinfo.com

Attorneys for Plaintiffs